# SUPREME COURT.

## VANDERBILT agt. THE ACCESSORY TRANSIT COMPANY.

The plaintiff brought his action upon a contract made with defendants, and among other things, being the principal controversy, alleged that it was for the sale and delivery to the defendants of a large quantity of *residuary coal*, at cost, to be paid for by defendants and retained by plaintiff out of the first earnings of the ships sold by plaintiff to defendants; that the coal, coal hulks, and fixtures, were transferred and delivered to the company, and that their value amounted at cost to, and had been *liquidated between the parties* at $180,706.58, and that $70,040.59 still remains due and unpaid.

The answer averred that the entire allegation in the complaint "as to the contract between them and the plaintiff, excepting so far as the same relates to the purchase and sale of the vessels and the purchase and sale of the coal, coal hulks, and fixtures, is totally and without qualification untrue. It is true that defendants were to pay for the coal, hulks, &c., out of the first earnings of the ships, but plaintiff was not to retain that amount; and defendants have paid the same and more than the same to said plaintiff. For the coal, hulks, fixtures, &c., the defendants owe nothing."

It being claimed by plaintiff, under § 168 of the Code, that by the answer of defendants they had admitted the allegation in complaint, that $70,040.59 was due—*Held*, that under § 160 the defendants might amend, upon terms, by making their answer more definite and certain.

*New-York Special Term, June,* 1854. Motion to amend answer.

> EDWARD SANDFORD, *for Motion.*
> CHARLES O'CONOR, *Opposed.*

ROOSEVELT, Justice. The defendants, it is supposed, by a slip of the pleader, made an implied admission in their answer, involving consequences to the amount of seventy thousand dollars and upward, contrary, it is alleged, to their intention, and contrary to the truth of the case; and they now seek by amendment, on such terms as may be just, to restore themselves, as far as may be, to their original position.

The contract upon which the action was brought, among other things, was for the sale and delivery to the defendants of a large quantity of residuary coal, understood to be at the places of deposit on the Atlantic and Pacific coasts of the isthmus, where the steamships received their supplies. Of how many tons did this residuum consist, or rather, with how many tons are the company chargeable? is the main point in dispute. The steamships were sold to the company at a fixed price of $1,350,000—the coal, "at cost," to be paid for out of the first earnings of the ships—the plaintiff continuing in his new character of agent, instead of principal, to conduct the business of the line.

It is alleged for him in his complaint—for he himself was absent in Europe when it was filed—that the coals, &c., were "transferred and delivered to the company, and that their value amounted at cost to, and had been liquidated between the parties at $180,706.58;" and that $70,040.59 "still remains due and unpaid."

The defendants in their answer—which seems to have been written with more passion than precision—"aver that the entire allegation in the complaint as to the contract between them and the plaintiff, excepting so far as the same relates to the purchase and sale of the vessels and the purchase and sale of the coal, coal hulks, and fixtures, is totally and without qualification untrue. It is true, (they continue,) that defendants were

to pay for the coal, hulks, &c., out of the first earnings of the ships, but plaintiff was not to retain that amount; and defendants have paid the same and more than the same to said plaintiff." And they add " for the coal, hulks, fixtures, &c., the defendants owe nothing."

The question then is, do these expressions, taken together, contain or imply a denial that the coal account had been *liquidated* between the parties at the amount specified in the complaint, or rather, do they by the omission of any direct, specific response to the averment in that particular necessarily admit its truth.

By the 168th section of the Code, it is declared, that " every material allegation of the complaint, not controverted by the answer, as prescribed in section 149, shall, for the purposes of the action, be taken as true." Now the 149th section, thus referred to as defining the rule, does not require a specific, but a " general, *or* specific, denial of each material allegation of the complaint controverted by the defendant."

Can it then be said—trying the answers by this rule—that it does not in some sort controvert the allegation of an account stated. " It seems to me, with the extracts above quoted, that can hardly be said, especially by a court whose express duty it is made, in the interpretation of pleadings, to apply to them the most liberal principles of construction, with a view, not to the overthrow, but to the establishment of " substantial justice between the parties."

That the answer is deficient in precision, all can see, and even the defendant's counsel does not deny. We may even allow it to be doubtful, in some aspects of the argument, whether it does or does not contain even a general response to the important averment in question. That the averment, however, was not intended to be *admitted*, is positively sworn, and that it is not a *fact*, on this motion at least, is a just inference from the same affidavits. Can the court then, with propriety, let the pleadings remain in their present state? Will it conduce to substantial justice to superadd to the original controversy another, still more distressingly doubtful, as to the legal

Vanderbilt agt. The Accessory Transit Company.

effect of the professional words in which that controversy is expressed?

When, says the Code, the allegations of a pleading, whether it be an answer or a complaint, "are so indefinite or uncertain that the precise nature of the charge or defence is not apparent, the court may (with or without the motion of counsel, in its own discretion) require the pleading to be made definite and certain by amendment." It seems to me this is precisely such a case. The plaintiff, it is true, insists that the time for amendment has gone by; and that, relying on the supposed admission, he has permitted two of his witnesses to depart the state without examination.

"In furtherance of justice," the law provides that amendments may be made, at any time, even after judgment, by correcting mistakes in any particular, or "by insisting other allegations material to the case." Terms, it is true, may be imposed on the moving party, and in cases where they are "proper," it is the duty, as well as the right of the court to impose them. But, with this qualification, the doctrine of amendment is to be liberally applied. The whole spirit of the Code, and in that respect it is but an emanation of the common sense of modern times, demands such a course of procedure. And the constitution of the state, I may add, which, in effect requires little more of a practitioner than that he should be twenty-one years of age, greatly increases the necessity. Under this liberal, or perhaps it may be called latitudinarian system of legal education, occasions for amendment must frequently occur; and they must be met, of course, both by the legislature and the judiciary, in the same temper as that which actuated the framers of the instrument out of which, in some degree, they may be said to originate. Technical exactness, once the beau ideal of the legal pleader, can no longer be expected, and ought no longer to be required. Tidd and Chitty are obsolete. And the courts must be blind to defects and indulgent to amendments. Such, in my judgment, is the rule which the temper of the times and of the country—wisely too, as I believe, prescribes in these cases.

The motion, therefore, of the defendants must be granted, but with this condition, that the amended answer shall be forthwith served, accompanied by the payment of all costs, including reasonable counsel fees, to be certified by one of the judges of the court, and with a written stipulation that the plaintiff on the trial may be a witness in his own behalf, without objection as to competency, and subject to the usual cross-examination.